## MURRAY CO. v. CITIZENS' OIL MILL.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1922.)

No. 1937.

1. **Sales ⬅179(3)—Provision of contract that acceptance shall be waiver of delay in delivery held valid and binding.**

   A provision in a contract for sale of machinery that receipt of the machinery by the purchaser shall be a conclusive waiver of all claims for damages by reason of delay in filling the order is valid and binding.

2. **Sales ⬅179(6)—Acceptance under protest held unavailing to negative waiver of delay in delivery under contract.**

   Where a contract for sale of machinery provided that its acceptance by the purchaser should be a conclusive waiver of any claim for damages for delay in delivery, the purchaser cannot avoid the binding effect of such provision by an acceptance under protest.

3. **Bills and notes ⬅537(1)—Amount of attorney's fees recoverable, when fixed by contract, not question for the jury.**

   In an action on promissory notes which provided for recovery of an attorney's fee of 10 per cent. in case of suit, where there was undisputed

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

testimony that such sum was reasonable under the circumstances, plaintiff was entitled to an instruction for its allowance.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action at law by the Murray Company against the Citizens' Oil Mill. Judgment for plaintiff, from which it brings error. Reversed.

Ernest F. Cochran, of Anderson, S. C. (J. W. Quattlebaum, of Anderson, S. C., and W. D. Ellis, Jr., of Atlanta, Ga., on the brief), for plaintiff in error.

M. L. Bonham, of Anderson, S. C., and James P. Carey, Jr., of Pickens, S. C. (Carey & Carey, of Pickens, S. C., and Bonham & Allen, of Anderson, S. C., on the brief), for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. Plaintiff in error was plaintiff, and the defendant in error defendant, in the court below, and will be referred to herein as plaintiff and defendant.

This is an action at law, arising out of a contract entered into between the plaintiff and the defendant, on the 4th of August, 1919, whereby the defendant contracted with plaintiff to purchase certain cotton seed oil machinery, upon the terms and conditions set forth in the contract. The plaintiff sues to recover for an alleged balance due it under the contract of $20,508.77, the details of which claim will be hereinafter set forth. The defendant interposed sundry defenses, including two counterclaims, one of $12,000, and the other for $20,000. The case was tried with a jury, the court eliminating from their consideration defendant's counterclaim of $12,000. A verdict was rendered by the jury in favor of the plaintiff for the sum of $11,490.75, on which judgment was entered, and from which this writ of error was sued out by the plaintiff.

Sundry exceptions were taken to the action and rulings of the court, pending the trial, regarding its interpretation of the contract, the admission and exclusion of testimony, and, by the plaintiff, for failure to instruct a verdict in its favor for the amount sued for, and also for the failure to set aside the verdict, and the entry of judgment thereon.

The plaintiff's claim was based upon 12 causes of action, covered by the contract in suit, exclusive of a claim for attorney's fees, alleged to be due, as follows: Ten claims, based upon 10 certain notes, fully set forth and described in the complaint, aggregating $16,775; the eleventh for $609.66, the amount of certain insurance premiums paid by the plaintiff for the defendant under the contract; the twelfth for the amount of an open account of $131.84. The due execution of the notes sued on was admitted; also the amount of the open account conceded. The contract between the parties was set up and relied upon by both sides, and there was no charge of fraud or mistake as to the contract, or its contents, and no averments of new or additional contracts or agreements.

The defenses interposed were: (a) That the item of insurance should not be allowed, because the defendant kept the property in-

sured as required by the contract. (b) A counterclaim, alleging in substance that the plaintiff, under the terms of the agreement of August 4, 1919, for the sale of the machinery, and for which the notes sued on were given, failed to ship the machinery within the time specified in the contract, and that the measure of damages for such delay was the rental value of the machinery, alleged to be $20,000. (c) A second counterclaim, alleging that the defendant was damaged by reason of its being forced, because of delay in the shipment of the machinery, to sell 200 tons of cotton seed at a loss of $12,000. (d) The defendant also filed a set-off for alleged overcharges in connection with the machinery furnished.

The merits of this appeal turn upon the correctness of the court's rulings respecting the several claims and counterclaims, and the same will be considered in the order hereinafter set forth; the assignments of error being considered, when applicable to the several items involved, as they arise. The more important question is whether the court erred in its ruling regarding the counterclaim for "rental value." The court's decision as to the counterclaim of $12,000 for "cotton seed loss" is immaterial, the jury having been instructed to disregard the same, and no cross-error was taken to such ruling.

First. The plaintiff was clearly entitled to recover the face amount of the notes sued on, aggregating $16,775, with interest from the extension period of June 15, 1920, unless the defendant was relieved therefrom by some of the defenses interposed in its behalf. The alleged counterclaim for cotton seed being eliminated, was the defense sought to be interposed by the counterclaim for "rental value" available to it? The contest between the parties, and the court's rulings in respect to the admission and exclusion of testimony, and its instructions and charge to the jury, largely center upon this counterclaim, as to the effect of the delay incident to the delivery of the machinery, whether under the terms of the contract the defendant was entitled to recover for such damages, the principles upon which the same should be allowed, and what would be the true measure thereof. These involve many difficult and doubtful questions of law, on which the authorities are by no means agreed; but most of them become unimportant, if the plaintiff's view of the contract be accepted, namely, that damages for delay in delivery are not recoverable under the contract, after acceptance by the defendant of the machinery.

[1] Consideration will be given first to the effect of the acceptance of the machinery by the defendant under the contract. The first, second, and third assignments of error, relate to this question, and it is insisted that under the following clause in the contract:

"In no case shall damage for delay in filling this order or shipping the machinery exceed in amount the rental value of the property for the period of such delay, which is hereby agreed to be the sole element of damage, and the receipt of said machinery by the purchaser shall be a conclusive waiver of all claims for damages by reason of such delay"

—no recovery can be had under the counterclaim for "Rental Value," the undisputed testimony showing that the defendant did receive and accept the machinery, which constituted a conclusive waiver of all

claims for damages by reason of such delay, and hence that the court should have instructed a verdict against the defendant under said clause. The court also was requested by the plaintiff to instruct the jury (it having submitted the case to the jury over plaintiff's objection) that there could be no recovery on account of the delay in delivery, by reason of the specific clause in the contract respecting the same, which instruction the court refused.

Was there error in the court's ruling in the two respects mentioned, in refusing to instruct a verdict against the defendant on this counterclaim, and to charge the jury that no recovery could be had thereunder? This is the vital question in the case, certainly as respects the amount of the recovery. It is by no means a new one, nor one as to which the authorities leave much room for doubt. Provisions of the character in question, contained in contracts, are intended to prevent the very controversies that have arisen here. They are not invalid for want of mutuality or consideration, nor subject to objection from the viewpoint of public policy, but, on the contrary, affect just such matters as business men want to make contracts in reference to, to guard themselves against the consequences of inability or failure to perform the contract, frequently from causes over which they have no control, and thereby avoid the conflicts that might arise in the absence of such reasonable and intelligent contractual provisions. The following cases strongly support these views: Victor Chemical Works v. Hill (C. C. A. 7th Cir.) 152 Fed. 393, 81 C. C. A. 519, 10 L. R. A. (N. S.) 814; Lancaster v. Platt (C. C. A. 3d Cir.), 172 Fed. 314, 97 C. C. A. 148; Phelps v. McDonough (C. C. A. 9th Cir.), 202 Fed. 449, 120 C. C. A. 551; 23 R. C. L. 1445. See, also, Lambert Hoisting Co. v. Paschal, 151 N. C. 27, 65 S. E. 523. And no contrary authority has been found or cited. The case of Victor Chemical Works v. Hill, supra, 152 Fed. 393, 81 C. C. A. 519, 10 L. R. A. (N. S.) 814, a decision of Judge Seaman, of the Circuit Court of Appeals of the Seventh Circuit, strikingly like this, will be found to contain an able and comprehensive review of this subject. In the present case, it will be observed that the clause in the contract provides that the receipt of the machinery shall be a conclusive waiver of all claims for damages by reason of delay. The defendant, by its duly accredited representative, after the date prescribed for the delivery under the contract, it is true, certified that the machinery had been erected in the plant in a good and workmanlike manner, stating that "the same is complete, is in good order, and, in accordance with the terms of the contract, and is hereby accepted."

[2] The defendant insists upon its right to recovery under its counterclaim, regardless of the clause above quoted, because it claims to have accepted delivery of the machinery under protest, which operates to relieve it from the provision of the contract, and it cites and relies on authorities to support its view as follows: Phillips & C. Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; In re Kelly (D. C.) 51 Fed. 194; Jeffrey Mfg. Co. v. Central Coal Co. (C. C.) 93 Fed. 408; Griffith v. Newell, 69 S. C. 300, 48 S. E. 259; Johnson et al. v. North Baltimore, etc., 74 Kan. 762, 88 Pac. 52, 7 L. R. A. (N. S.)

1114, note to 11 Ann. Cas. 508; Van Winkle v. Wilkins, 81 Ga. 93, 7 S. E. 644, 12 Am. St. Rep. 299; Johnson v. North Baltimore Bottle Glass Co., 74 Kan. 762, 88 Pac. 52, 11 Ann. Cas. 508, 7 L. R. A. (N. S.) 1117; Wall v. St. Joseph, etc., 112 Mo. App. 659, 87 S. W. 574; 23 R. C. L. 1445. A careful review of these cases shows that the contracts under consideration did not contain the restrictive clause regarding deliveries, as in this case, but were dependent upon their several peculiar facts and circumstances, which clearly distinguishes them from this, and hence the same are not controlling, or especially applicable here. Moreover, the defendant cannot avoid the provisions of the contract prescribing the effect of the receipt of the machinery, as bearing upon its right to recover damages for delay in delivery, by receiving it under protest. It would open up all sorts of controversies, and destroy the binding effect of contracts, if those to be affected thereby could avoid liability by mere protest. In the absence of a clause such as the one in question here, vendees may doubtless be entitled to recover for unreasonable delay in deliveries under the contract, not within the contemplation of the parties thereto; but the remedy in a case like the present is to refuse to accept the delayed shipment and sue for breach of the contract.

The District Court, in our judgment, on the face of this contract, as well as from the testimony adduced, should have ruled that no recovery could be had under the counterclaim, arising from delay in deliveries.

Second. The tenth and eleventh assignments of error relate to the eleventh cause of action, based upon insurance premiums paid by the plaintiff on account of the defendant, pursuant to the provisions of the policy, amounting to $609.66. The testimony covering this item is clear and positive, and shows that not only did the plaintiff incur the liability on defendant's account under the contract, but was forced to do so by the apparently unreasonable and unbusinesslike methods of the latter, and the court should have instructed the jury to allow the full amount of the same.

Third. The twelfth assignment of error relates to the item of open account of $131. The correctness of this amount was admitted by the defendant, and a verdict should have been directed for the plaintiff for the same.

Fourth. The eighth and ninth assignments of error relate to the defendant's set-off of $700 for overcharges alleged to have been made by the plaintiff. The burden of proof to maintain this claim rests upon the defendant, and while there is some testimony to support it, or rather some foundation for making the claim, still we are satisfied, after a careful consideration of the whole testimony and review of the transactions between the parties, that in adjusting the differences between them, arising from credits and cancellations, this amount was taken into account. The treasurer of the plaintiff company testified positively to having given credit for these specific overcharges, and produced and offered in evidence the original memorandum of credit, giving in detail the various items allowed, which tallied exactly with the amounts claimed. To allow the defendant to recover for this al-

leged overcharge would be in effect to secure credit twice, and the jury should have been instructed to return a verdict against the defendant on account thereof.

[3] Fifth. This leaves for consideration only the question of the allowance of a proper attorney's fee for plaintiff's counsel, also covered by the twelfth assignment. The district court instructed the jury that—

"To any amount they might find in favor of the plaintiff on the notes sued on they should add to such amount a reasonable attorney's fee."

The error assigned is that the court should have specifically instructed a verdict for the plaintiff for the full amount of 10 per cent. on the balance due upon the notes sued on, as provided for in the notes, in case of the same being placed in the hands of an attorney for collection, or the institution of suits thereon for that purpose. In support of this claim, several witnesses were examined by the plaintiff, who testified to the reasonableness of the charge of 10 per cent. on the facts in this case. There was no testimony to the contrary, and, so far as the court can judge, the amount was entirely reasonable in the circumstances, and certainly was not so far unreasonable as would warrant the setting aside, or failure to respect the plain provisions of the contract between the parties, specifically set forth in the notes in suit. Under the practice in the federal courts, where the facts are not in dispute, it is the duty of the court to instruct a verdict in accordance therewith. This is a matter of serious moment to parties litigant, frequently, as in this case, with a written undertaking contracting in unambiguous terms to pay 10 per cent. for attorney's fees, and the testimony indisputably showing that sum to be entirely reasonable, why should the jury have been instructed to make such an allowance as to them seemed reasonable? A more inviting field for ill-advised speculation could not well have been opened up, for the exercise of visionary and uncontrolled imagination of jurors. The jury should have been instructed to return a verdict in favor of the plaintiff for 10 per cent. of the amount of the recovery on the notes.

The judgment of the lower court will be reversed, and the case remanded thereto, with directions to set aside the verdict and award a new trial, the same to be proceeded with in accordance with the views herein expressed, assuming that the testimony is, in effect, the same.

Reversed.